UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT CORTEZ BURRELL,

                  Petitioner,

v.

UNITED STATES OF AMERICA,

                  Respondent.

Civil Case Number 25-11448
Criminal Case Number 21-20395
Honorable David M. Lawson

_____/

## OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE

Petitioner Robert Burrell was convicted by a jury of drug distribution and firearm charges and sentenced to 15 years in prison. The evidence at his five-day trial consisted of testimony by an investigating officer relating to the search-warrant-authorized seizure of evidence from four different houses connected to Burrell, evidence of extensive surveillance of Burrell's contacts with heroin and fentanyl customers, and information obtained from an informant who was identified by name but who did not testify at trial. Burrell's conviction and sentence were affirmed on direct appeal. *United States v. Burrell*, 114 F.4th 537 (6th Cir. 2024). Burrell now has filed a motion to vacate his sentence and convictions, arguing that his attorneys did not provide representation consistent with the Constitution, mainly because they filed a second motion to suppress evidence outside the motion-filing deadline, they did not challenge timely the firearm charge as unconstitutional under the Second Amendment and failed to assert an as-applied challenge to it, they failed to adduce evidence of a connection between him and one of the searched premises to establish "standing," trial counsel did not assert proper objections to certain witness testimony, and appellate counsel mishandled certain appellate arguments. The motion is fully briefed, and no hearing is necessary to determine that the claims lack merit. The motion will be denied.

I.

The facts of the case and the proceedings leading up to the trial were summarized in detail by the court of appeals in its opinion on direct appeal. *Burrell*, 114 F.4th at 545-47. To recap, petitioner Burrell attracted the attention of the Drug Enforcement Administration (DEA) after the agency received a tip from an anonymous informant that Burrell was conducting an extensive drug-trafficking operation from several residences in Lincoln Park, Allen Park, and River Rouge, Michigan. Based on the tip, along with corroborating information obtained from their own extensive surveillance of Burrell's activities and other information, case agents obtained search warrants for four residences connected to Burrell. The agents executed the warrants on December 10, 2020 and recovered substantial quantities of drugs, including fentanyl and heroin, three handguns and dozens of rounds of ammunition, other drug-trafficking equipment, and $15,000 in cash. Burrell was present at one of the houses and was arrested.

The petitioner was charged with possessing with intent to distribute fentanyl and heroin in violation of 21 U.S.C. § 841(a)(1) (Counts I and II), maintaining a drug premises in violation of 21 U.S.C. § 856(a)(1) (Count III), and possessing a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) (Counts IV and V). The two section 922(g) counts later were merged.

Burrell, who initially was represented by attorneys Amanda Bashi and Natasha Webster of the Federal Community Defender's Office, moved to suppress the evidence obtained from the search of the residences on the ground that the warrants were issued in violation of the Fourth Amendment. The Honorable Robert H. Cleland, to whom this case was assigned originally, denied the defendant's motion. ECF No. 21. Then, about two weeks before the start of trial, the defendant again moved to suppress the evidence obtained from the execution of the search warrants on slightly different grounds and also to dismiss the firearm counts under *New York State Rifle &*

*Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022).  Judge Cleland denied both motions.  He first observed that the defendant had filed both motions nearly six months after the motion filing deadline and provided no explanation for the untimely filing.  However, Judge Cleland also addressed both motions on the merits.  He denied the suppression motion because it relied in part on "the same exact argument" that he had "previously rejected."  ECF No. 34, PageID.372.  Judge Cleland explained that the motion to dismiss the firearm counts fared little better since facial challenges to the constitutionality of section 922(g)(1) had been rebuffed nationwide.

Attorneys Bashi and Webster then moved to withdraw from the case, citing a breakdown in the attorney-client relationship.  ECF No. 37.  Judge Cleland granted the request, and attorney Henry M. Scharg was appointed as substitute counsel.   The matter proceeded to a jury trial on October 6, 2022, with Mr. Scharg for the defense.  After five days of trial, the jury found the defendant guilty on all counts.  Judge Cleland sentenced Burrell to concurrent 120-month prison terms on Counts I and II, and concurrent 60-month terms on Counts III and IV, which would run consecutively to the sentences on the other two counts, resulting in a total sentence of 180 months.  He also was sentenced to five years of supervised release.

Burrell timely appealed his conviction and sentence.  He argued that the district court should have suppressed evidence obtained from the execution of search warrants, the section 922(g) charge violated the Second Amendment, and the court erred by admitting certain testimony at trial that violated the Confrontation Clause and the Rules of Evidence.  He also raised an ineffective-assistance-of-counsel claim.  The court of appeals rejected each argument and affirmed the judgment.  It denied relief on the ineffective-assistance-of-counsel claim because the record was not complete and those claims traditionally are raised in post-conviction motions.  *Burrell*, 114 F.4th at 548.

On May 9, 2025, defendant filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255, and the matter was reassigned to the undersigned in light of Judge Cleland's retirement.  The government has filed a response opposing the motion on the merits.  The defendant did not file a reply.

II.

It is well understood that a federal defendant challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or it "is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  And he "must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'"  *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

Here, Burrell's main contentions are that his trial attorneys' performances dipped below professional norms.  To succeed on an ineffective assistance of counsel claim, the petitioner "must show both deficient performance by counsel and prejudice."  *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  One way of establishing deficient performance is to show that defense counsel missed a meritorious argument under the controlling law.  However, the failure to file a meritless motion or raise a groundless objection does not constitute deficient performance. *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (stating that an "attorney is not required to raise a non-meritorious claim" (citing *Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007))); *see also Knowles*, 556 U.S. at 123

-4-

(observing that the "[Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" to avoid a finding of deficient performance under *Strickland*).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In a federal habeas proceeding, when the Court weighs a claim of ineffective assistance, "[a]n evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief" on his claim. *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quotations omitted). "Where there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims," but "[a] petitioner's mere assertion of his innocence, without more, does not entitle him to an evidentiary hearing." *Ibid.* And where the record presents "considerable doubt" about the interactions of a petitioner and his attorney, the Court should conduct an evidentiary hearing to bring clarity to the proceedings. *See Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003). But where the existing record demonstrates no significant factual dispute, that the claims of ineffective assistance are unsupported, or that the petitioner has not met the applicable standard, no hearing is required. *Goward v. United States*, 569 F. App'x 408, 412 (6th Cir. 2014).

Burrell argues that his trial counsel was ineffective in several respects: (1) by failing to move timely to dismiss the section 922(g)(1) counts as unconstitutional under *Bruen*, (2) by failing to raise at all whether the statute was unconstitutional as applied to him, (3) by failing to establish

his "standing" to contest the search of one address that he maintains was, in fact, his residence, (4) and by failing to object to testimony at trial that he believes improperly vouched for a witness's credibility and amounted to prosecutorial misconduct.  He also takes issue with certain arguments raised by his appellate counsel, which he says were improperly handled.

A.

Burrell's first two arguments center on whether his trial counsel performed deficiently by failing to raise certain arguments based on the Supreme Court's 2022 decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022).  He maintains that his attorneys underperformed in two ways: by filing a motion challenging the constitutionality of section 922(g) under *Bruen* after the deadline for filing pretrial motions in his case, and by failing to argue that the statute was unconstitutional as applied to him.  No hearing is required on either claim because "the record conclusively shows that the petitioner is entitled to no relief."  *Blanton v. United States,* 94 F.3d 227, 235 (6th Cir. 1996).

Consider first the untimeliness argument.  Recall that Burrell's trial attorneys filed the motion approximately six months after the motion filing deadline and approximately three months after the Supreme Court decided *Bruen*.  *See* ECF No. 32.  It is true Judge Cleland took note of the late filing and observed that the defendant had not asked the court to extend the motion cutoff date. ECF No. 34, PageID.373.  Nevertheless, he proceeded to reject the motion on the merits, citing decisions of other federal courts rejecting similar facial challenges to the felon-in-possession statute.  *Id.* at PageID.373-74.  And in any event, the Sixth Circuit squarely has rejected a facial challenge to the statute, meaning that Burrell could not have been prejudiced by his attorneys' failure to file the motion timely.  *See United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024) (holding that section 922(g)(1) "is not susceptible to a facial challenge").  Burrell seems to suggest

-6-

that his attorneys were "prematurely ineffective" by failing to make a facial challenge before *Bruen* was decided.  ECF No. 91, PageID.1532.  It is not apparent what he means, and since the Sixth Circuit has definitively concluded that no facial challenge to section 922(g)(1) is viable, this claim fails.

Burrell also believes that his attorneys should have argued that the felon-in-possession charges were unconstitutional as applied to him.  Although the Sixth Circuit in *Williams* ruled that the statute was constitutional on its face, the court left room for a defendant "to demonstrate that he is not dangerous, and thus falls outside of § 922(g)(1)'s constitutionally permissible scope." *Ibid.*  Although Congress, consistent with the "nation's history and tradition," can "disarm individuals they believe are dangerous," "when the legislature disarms on a class-wide basis, individuals must have a reasonable opportunity to prove that they don't fit the class-wide generalization."  *Id.* at 657, 661.

Burrell argues that his lawyers should have objected to the government's failure to adduce evidence of his criminal history to demonstrate his dangerousness.  However, the burden was with Burrell to make that showing, not the government.  *See id.* at 661 ("Thus, in an as-applied challenge to § 922(g)(1), the burden rests on [the defendant] to show he's not dangerous.").  True, trial counsel did not marshal any evidence addressing this point, but Burrell has not explained how he would have satisfied that burden in any event.

*Williams*, once again, remains instructive.  According to the Sixth Circuit, in determining whether a defendant's prior convictions establish his "dangerousness," courts are to "focus on [the defendant's] specific characteristics," and "[t]hat necessarily requires considering the individual's entire criminal record — not just the predicate offense for purposes of § 922(g)(1)."  *Id.* at 657-58. The panel provided only limited guidance for that inquiry, constraining its holding to the

conclusion that "certain categories of past convictions are highly probative of dangerousness, while others are less so." *Id.* at 658.

Parsing the compendium of lawless behaviors, the panel opined that "crimes against the person [encompassing] dangerous and violent crimes like murder, rape, assault, and robbery . . . speak directly to whether an individual is dangerous." *Ibid.* As the panel explained, "[i]t is hard to see how someone who commits such a dangerous and violent act may overcome the presumption that they are dangerous," and "there is little debate that violent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question." *Ibid.* "The dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant," but "in many instances — prior murders, rapes, or assaults — the dangerousness will be self-evident." *Id.* at 660. The panel observed that other categories of crimes also could suffice to establish dangerousness, suggesting that drug trafficking offenses and violations of 18 U.S.C. 924(c), "while not strictly crimes against the person, may nonetheless pose a significant threat of danger," because "drug trafficking is a serious offense that, in itself, poses a danger to the community." *Id.* at 659.

It is true that Burrell's criminal history is not especially severe, nor are his felony convictions very recent. In 1988, he pleaded guilty to delivery or manufacture of less than 50 grams of cocaine, heroin, or another narcotic and was sentenced to 1 to 5 years in custody. PSR ¶ 39. In 1991, he pleaded guilty in this Court to conspiracy to distribute cocaine, distribution of cocaine, "aiding and abetting," and being a felon in possession of a firearm. *Id.* ¶ 40. He was sentenced to 21 months in prison with three years of supervised release to follow. And in 1994, he was found guilty in state court being a habitual offender and was sentenced to prison for an indeterminate prison term of one and up to seven years and six months in custody. *Id.* ¶ 41. The

remainder of his criminal record, although more recent, primarily consists of traffic offenses and two convictions for driving under the influence. *Id.* ¶¶ 42-46.

Nevertheless, *Williams* instructs that individuals convicted of "drug trafficking" crimes, like Burrell, "inherently pose[] a significant threat of danger" and consequently "will have a very difficult time, to say the least, of showing [they are] not dangerous." *Williams*, 113 F.4th at 663. Of course, *Williams* leaves room for individuals "to make individualized dangerousness determinations," notwithstanding the fact that the individual was convicted of a crime posing a significant threat. *Id.* at 661, 663. Perhaps Burrell wishes that his attorneys had argued that he was not dangerous and thus lawfully could own a firearm, particularly in light of the age of his drug convictions. However, Burrell offers little, if any, explanation for how he would establish that he was not dangerous. *See id.* at 663 (stating that individuals convicted of drug crimes "will have a very difficult time" of making that showing). And despite the age of his felony convictions, his more recent record still gives cause for concern. Those convictions — which include two misdemeanor driving under the influence offenses and a driving without a license charge — still may be considered by a court in assessing an as-applied challenge. *See id.* at 659-60. The Sixth Circuit has stated that DUI offenses represent dangerous conduct because of the "danger to public safety," and that a pattern of such conduct supported a finding of dangerousness that precluded an as-applied challenge to section 922(g)(1). *See United States v. Goins*, 118 F.4th 794, 804 (6th Cir. 2024). Two DUI convictions do not necessarily make a pattern, but they are at least unfavorable evidence. *Cf. Fenderson v. United States*, No. 24-3643, 2024 WL 5347131, at *1 (6th Cir. Dec. 13, 2024) (holding that defendant with prior drug trafficking convictions had not satisfied his burden where he merely asserted he "was not a violent threat and at the time of his arrest was a 'law-abiding citizen.'"). Notably, Burrell does not offer any examples where courts have found

that defendants with similar criminal histories should prevail in an as-applied challenge to section 922(g)(1). *See Knowles*, 556 U.S. at 123; *see also United States v. Williams*, No. 20-66, 2025 WL 1530507, at *4 (S.D. Ohio May 29, 2025) ("[D]istrict courts around the Sixth Circuit have consistently denied ineffective assistance of counsel claims premised on allegations of counsel failing to challenge the constitutionality of § 922(g)(1) under the *Bruen* analysis.") (collecting cases). And it is well known that an "attorney is not required to raise a non-meritorious claim." *Jalowiec*, 657 F.3d at 321-22 (citing *Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007)). Against this backdrop, Burrell's trial counsel did not perform deficiently by not making an explicit as-applied challenge to Counts IV and V of the indictment, since there is little likelihood that they would have prevailed on an argument that the statute was unconstitutional as applied to him.

## B.

Burrell also argues that his attorneys performed deficiently by failing to adduce evidence that would support his "standing" to challenge a search of a property he alleges is one of his residences. For context, Burrell argued before trial that the Court should suppress evidence obtained from the searches of four properties connected to him because the affidavits supporting those searches failed to establish probable cause because they were supported only by an anonymous tipster and lacked information proving a nexus between the properties and the alleged criminal activity. The trial court denied the motion, and Burrell challenged that ruling on direct appeal. The Sixth Circuit held that the DEA Agents who obtained the warrants had sufficient information to conclude the anonymous informant's tips were reliable. *Burrell*, 114 F.4th at 551. The court also held that there was a sufficient nexus as to three of the four properties. But the fourth, the Fairmont Street residence, presented "a closer call." *Id.* at 552. The evidence established that Burrell entered and exited the property for brief visits, interacted with known drug

dealers at the home, and that "Burrell had transported drug-manufacturing equipment to Fairmont Street and worked to process narcotics at the residence as well." *Ibid.* The court observed that although this evidence provided probable cause to believe that Burrell was trafficking drugs and that evidence of drug trafficking would be found at the property, there was no evidence that he lived there, raising a question of whether he had "standing" to contest the search. Since Burrell "[did] not address this standing issue, nor [did] he specify what aspects of the affidavit for the warrant to search Fairmont Street were insufficient," the court of appeals rejected his claim that the evidence should have been suppressed. *Id.* at 553 (citing *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)).

As an aside, it is curious that the court of appeals addressed that question under the "standing" rubric. Characterizing this question as one of "standing" miscasts the issue. The Supreme Court rejected the concept of "standing" for Fourth Amendment violations in *Rakas v. Illinois*, 439 U.S. 128, 139-40 (1978), *abrogated in part by Carter*, 525 U.S. 83. It is commonly acknowledged that "in determining whether a defendant is able to show the violation of his . . . Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" *Carter*, 525 U.S. at 88 (quoting *Rakas*, 439 U.S. at 140). More than twenty-four years ago, the Sixth Circuit itself recognized that "the concept of 'standing' has not had a place in Fourth Amendment jurisprudence for more than a decade" and that "the matter of standing in the context of searches and seizures actually involve[s] substantive Fourth Amendment law [in which] . . . a defendant [must] prove a legitimate expectation of privacy as a prerequisite to challenging assertedly unlawful police conduct." *United States v. Smith*, 263 F.3d 571, 581-82 (6th Cir. 2001) (quoting *United States v. Sanchez*, 943 F.2d 110, 113 n.1 (1st Cir. 1991)). Nevertheless, when citing *Carter* the court

essentially acknowledged that the proper question was whether Burrell "demonstrate[d] that he personally has an expectation of privacy in the place searched." *Burrell*, 114 F.4th at 553.

Burrell appears to believe that his counsel should have located evidence that would have established his expectation of privacy in the Fairmont Street residence. But such evidence would not have helped him. Even if he had made that showing, the court of appeals concluded that the warrant affidavit sufficiently established that "Burrell was trafficking drugs; . . . and []that evidence of drug trafficking would be found at Fairmont Street." *Id.* at 552-53. And in any case, the court of appeals went on to conclude that the good faith exception applied, so suppression would not have been appropriate. *Id.* at 553-54. Burrell is not entitled to relief on this claim.

C.

Burrell next contends that his trial counsel was ineffective by failing to object to certain testimony of DEA special agent Zachary Snyder that he says improperly vouched for the credibility of another witness. The defendant raised a similar claim in his direct appeal and the court of appeals provided a helpful summary of the background:

> At [one] point in [Snyder's] testimony, the government asked [him] to describe the security-video footage retrieved from the Ohio gas station where Burrell had briefly visited and had entered a parked vehicle. He also testified about his interview with the clerk who worked at the gas station. The clerk, who had a history of criminal convictions, confirmed that she knew Burrell, but denied that Burrell sold her drugs.
>
> . . .
>
> During the direct examination of Snyder, the government's attorney asked him whether he was concerned about the information that the clerk had provided him. Snyder responded that, because of the clerk's criminal background, he did not believe what she said about her relationship with Burrell. During cross-examination, Snyder confirmed that the clerk denied purchasing drugs from Burrell, which Snyder did not believe. The government's attorney clarified Snyder's testimony during redirect examination, and Snyder again said that he did not believe that the clerk was being truthful.

*Burrell*, 114 F.4th at 547, 556; *see also* Trial Tr. Vol. IV, ECF No. 61, PageID.916, 976, 994-95. On appeal, Burrell argued that the district court improperly permitted Snyder's comments about his assessment of the store clerk's credibility and the exchange amounted to prosecutorial misconduct because asking a law enforcement officer whether someone else is lying is improper. Because Burrell's counsel failed to object at trial, the court of appeals reviewed the claim under the plain-error standard. *Id.* at 556.

The court quickly disposed of the claim, emphasizing that the prosecutor's conduct did not fall within the traditional understanding of prosecutorial misconduct and his brief cited no caselaw in support. *Ibid.* The court also rejected the defendant's contention that Snyder's testimony violated Rules 401, 402, 608, 609, and 701 of the Federal Rules of Evidence. *Ibid.*

In his section 2255 motion, Burrell maintains once again that Snyder's statements were "highly improper," and his counsel performed deficiently by failing to object at trial. This argument comes up short. The Sixth Circuit already rejected this claim on the merits, and although it only reviewed the claim for plain error, his arguments add little insight other than merely reiterating his belief that the commentary was improper. True, Mr. Snyder shared his own views regarding whether the gas station clerk had been truthful to him, but as the court of appeals pointed out, the gas station clerk was not a witness at trial. *Burrell*, 114 F.4th at 557. Burrell also leaves entirely unexplained why including Snyder's assessment of the gas station clerk's credibility amounted to misconduct by the prosecution, or otherwise would have significantly prejudiced him, particularly in light of the other evidence presented at trial regarding the drugs confiscated from his residences.

Burrell has demonstrated neither deficient performance nor prejudice in this instance.

D.

Finally, Burrell argues in passing that his appellate counsel performed deficiently by raising his ineffective assistance of counsel arguments in his direct appeal. However, it is not clear how he was harmed by this choice. The Sixth Circuit declined to address the issue in the direct appeal to permit the development of a record on the claims in section 2255 proceedings, as is its standard practice. *See Burrell*, 114 F.4th at 548. In so doing, the court of appeals did not make any conclusions that prevented the petitioner from fully developing those issues here in his section 2255 motion. This claim will be denied.

In addition, Burrell argues that his appellate counsel harmed his case by insinuating in his opening brief before the court of appeals that Judge Cleland denied the *Bruen* motion on timeliness grounds as a "shield against having to write a difficult opinion." Doc. 40, *United States v. Burrell*, No. 23-1261 (6th Cir.). It should be acknowledged that Judge Cleland *did* pass on the merits of the *Bruen* motion, notwithstanding the late filing. Perhaps for that reason, Burrell says his counsel's statement was "inflammatory" and may have offended the court of appeals. However, there is no evidence that the court of appeals was swayed in its decision by this statement, and he has cited no case law supporting the proposition that a single statement by counsel in an appellate brief, even if "inflammatory," amounts to ineffective assistance. This argument also fails.

III.

The petitioner's claims of ineffective assistance of counsel are without merit, and no hearing is required for that determination.

Accordingly, it is **ORDERED** that the petitioner's motion to vacate his sentence (ECF No. 91) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   December 8, 2025